**WILENCHIK & BARTNESS**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona 85004

Telephone: 602-606-2810   Facsimile: 602-606-2811

John "Jack" D. Wilenchik, #029353
admin@wb-law.com
jackw@wb-law.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Linda Rae'Lee Klein, an individual,** | **Case No: 2:20-cv-01982-SPL** |
| **Plaintiff,** | |
| v. | **AMENDED VERIFIED COMPLAINT** |
| **The Arizona Board of Regents, Arizona State University, and the Walter Cronkite School of Journalism and Mass Communication; and Kristin Grady Gilger,** | **(Denial of Student's Right of Expression under the First Amendment, Section 1983; A.R.S. § 15-1864)** |
| **Defendants.** | **(Injunctive Relief Requested)** |
| | **(Demand for Jury Trial)** |

Plaintiff Linda Rae'Lee Klein ("Rae'Lee Klein," or "Plaintiff"), for her Amended Verified Complaint against Defendants Arizona Board of Regents, Arizona State University and the Walter Cronkite School of Journalism and Mass Communication (collectively, "ASU"); and Kristin Grady Gilger ("Dean Gilger")(all of the foregoing entities being referred to as the "Defendants" herein), hereby alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff was a resident of Maricopa County, Arizona at all times relevant hereto.

2. The Arizona Board of Regents ("ABOR") is a jural entity with the capacity to sue or be sued under A.R.S. § 15-1625. Defendant Arizona State University is a "university under the jurisdiction of the Arizona board of regents" within the meaning of A.R.S. § 15-1861(4). The Walter Cronkite School of Journalism and Mass Communication is a journalism program at ASU. ABOR is legally responsible for the university and journalism program and properly named as the entity with legal capacity to be sued. For ease of reference, the term "ASU" is hereinafter used to refer to all of the foregoing entities as well as to Arizona State University, specifically.

3. Defendant Kristin Grady Gilger is the Interim Dean of the Walter Cronkite School of Journalism and Mass Communication at ASU and a "faculty member or administrator" of a university within the meaning of A.R.S. § 15-1864(I).

4. This Court has subject-matter jurisdiction over the Verified Complaint pursuant to 28 U.S.C.A. § 1331, because this action arises under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

5. Venue is proper because Plaintiff resides in Maricopa County and the ASU campus is located in Maricopa County, Arizona.

**GENERAL ALLEGATIONS**

6. The preceding allegations are incorporated herein.

7. This matter arises out of the wrongful termination of Rae'Lee Klein as station manager of Blaze Radio, ASU's only radio station (which is online).

8. On August 23, 2020, national media reported that a man named Jacob Blake was shot and wounded by police officers in Kenosha, Wisconsin (hereinafter referred to as the "Blake Incident").

2

9.  Video circulated of the Blake Incident which showed that Blake was black, and the shooting officer was white.

10. Subsequently, a number of national news reports and commentary implied or alleged that the Blake Incident was racially-motivated.[1]

11. It was also reported that the Blake Incident was being investigated by the Justice Department's division of criminal investigation, and that protestors demanded an arrest of the shooting officer.[2]

12. In August, Ms. Klein read an article in the New York Post which reported that Jacob Blake had an active warrant out for his arrest "for violating a restraining order stemming from alleged sexual assault."

13. The New York Post article linked to a copy of the arrest warrant.

14. According to the New York Post article and the arrest warrant, Mr. Blake had allegedly committed sexual assault against a woman by digitally penetrating her in front of her child, before stealing her car.

15. Prior to the New York Post article being published, those facts had not been widely reported by news media.

---

[1] *See e.g.* "Jacob Blake's shooting shows America has a long way to go in its journey toward a racial reckoning," https://www.cnn.com/2020/08/30/us/jacob-blake-shooting-one-week-later/index.html (quoting Columbia University lecturer who referred to shooting as a "lynching" and stated that it was a "reminder of pervasive and entrenched racial violence in America"); "The Shooting of Jacob Blake is a Wake-Up Call," https://www.theatlantic.com/ideas/archive/2020/08/the-shooting-of-jacob-blake-is-a-wake-up-call/615616/).

[2] *See e.g.* "Student-Led Protest Pushes For Arrest Of Rusten Sheskey," https://www.wortfm.org/student-led-protest-pushes-for-arrest-of-rusten-sheskey/; "What we know about Rusten Sheskey, the officer involved in the Kenosha shooting," https://www.washingtonpost.com/nation/2020/08/29/what-we-know-about-rusten-sheskey-officer-involved-kenosha-shooting/.

16. From her personal Twitter account, Ms. Klein tweeted out a link to the New York Post story with the comment, "Always more to the story, folks. Please read this article to get the background of Jacob Blake's warrant. You'll be quite disgusted."

17. Subsequently, certain students demanded that the University remove Ms. Klein from her position as station manager.

18. A "board" of students who are involved with the station, and who are paid by ASU as employees, demanded that Plaintiff resign.

19. According to the Society of Professional Journalists' "Code of Ethics" (hereinafter referred to as the "Code"), one of the core tenets of journalism is that a journalist must "[s]upport the open and civil exchange of views, even views they find repugnant."[3]

20. According to the Code, journalists must also "[e]ncourage a civil dialogue with the public about journalistic practices, coverage and news content"; "[e]xpose unethical conduct in journalism"; and give a "voice to the voiceless."

21. The Code also provides that for any story, a journalist must "[g]ather, update and correct information throughout the life of a news story."

22. Numerous media outlets had reported and/or gave voice to the idea that the shooting of Jacob Blake was motivated by Blake's race.

23. Ms. Klein shared a factual report which supported that Blake had an outstanding arrest warrant for a violent crime, which would tend to support that the police interaction with Blake was primarily for criminal justice reasons.

---

[3] *See* the Society of Professional Journalists "Code of Ethics," https://www.spj.org/ethicscode.asp.

4

24. Ms. Klein's decision to share the New York Post article was consistent with journalistic ethics, which require that contrary viewpoints or information be openly shared, even though some may find them repugnant.

25. Further, the tweet was from her personal account and clearly expressed her personal and objectively uncontroversial opinion that Mr. Blake's alleged crime, which was raping a woman in front of her child, was something that readers would find repugnant, disturbing or upsetting.

26. Ms. Klein's presentation of the article and opinion were civil and not intended to, nor did they, incite violence or harm.

27. Rather than support Ms. Klein's efforts to exchange contrary facts or views, Dean Gilger told Ms. Klein that as a result of her personal tweet, "staying on as station manager is not an option." (See September 15, 2020 email sent at 2:30 PM, attached as **Exhibit "A"** hereto and incorporated as if set forth herein.)

28. The student "board" also locked Ms. Klein out of the station. The board members deleted her online user account, so she can no longer access or manage the station (which is online), completely preventing her from doing her job.

29. ASU pays for and owns The Blaze radio.

30. Plaintiff has demanded, but ASU has failed or refused, to restore Plaintiff's access to the station.

31. Dean Gilger admits that Plaintiff is not "unfit to be a station manager." (See **Exhibit "B"** hereto, email from Kristin Gilger dated September 17, 2020 at 9:59 AM.)

32. As a result of the foregoing actions, ASU has constructively or actually terminated Ms. Klein from her position as station manager, unlawfully, based on the content of her free speech.

**"Cronkite News," and the "Social Media Guidelines"**

33. Every student of the journalism school is required to participate in the "Cronkite News" program.

34. The "Cronkite News" program requires that every participating student have their own personal Twitter account.

35. The "Cronkite News" program encourages students to use their personal account to share news articles, and to engage their "followers" and the public with commentary. The program even goes so far as to assign students a grade for how often they use their personal account, and how large their "audience" is (how many "followers"/readers they attract).

36. The "Cronkite News" program recommends that students follow the Cronkite school's "social media guidelines" when using their personal social media accounts. According to the school, the guidelines are intended "to ensure the highest journalistic standards," and the guidelines "reflect the Society of Professional Journalists' Code of Ethics core principles."[4]

37. These "guidelines" that are distributed to students state that "Personality is important: Don't sound like a robot. Self-promotion is encouraged, but personal accounts differ from organization accounts. Your audience wants to connect to a real person, so sound like one! But keep in mind you're a journalist. Journalists often use social media to raise questions, make smart observations about other reporting and share content."

38. The guidelines also recommend that students "avoid posting information to social networking sites or blogs that could call into question your ability to act independently as a journalist. This includes expressing political views, sports fandom or opinions about newsmakers

---
[4] Partially online, at https://cronkite.asu.edu/degree-programs/admissions/student-resources/social-media-guidelines.

6

or sharing internal communications, even if you are participating in what is supposed to be a private group."

39. The guidelines also state: "[r]ecognize that affiliations and sponsorships jeopardize your independence and could affect your assignments."

40. Faculty, staff and students of the Cronkite school regularly share or display their political views, sports fandom or opinions about newsmakers, as well as affiliations or sponsorships, on their personal social media accounts.

41. For example, the faculty advisor who was assigned to the radio station at all relevant times, Ali Forbes, displayed pro-police messages on her Facebook during all relevant times, as well as images/messages indicating that, even though she had been a sports journalist, she was a fan of the Toronto Raptors.

42. The "Interim Dean" of the Journalism School herself, Defendant Dean Gilger, has retweeted controversial "political views" and "opinions about newsmakers" as recently as August 5, 2020, when she retweeted an interview with a woman who wrote a book entitled "Why White Evangelicals Worship at the Altar of Donald Trump."[5] In the interview, the author claims that evangelical Christians' religious beliefs contribute to "coronavirus denial"; that evangelical Christians should be "following the rules" instead of "listen[ing] to President Trump, who is going to claim that we have it [coronavirus] under control, even though we don't"; and that President Trump engages in "magical thinking" and is living in a "fantasy land." The author also refers to evangelical Christians' use of the courts "to press claims of violation of constitutional rights" as "extremely disturbing." At the end of the interview, the interviewer—who is an ASU professor of religious studies—claims that "Trump has just pulled out the stops on his racist rhetoric [over the last week], there's no attempt to even hide it now"; and she asks, "is that

---

[5] https://twitter.com/RecoveringTruth/status/1291110582079242240

7

playing into this set of dynamics that you've identified that keep white evangelicals in thrall to Trump, even through a pandemic"? (To which the author answers, "yes.")

## COUNT ONE
**(Unconstitutional Denial of Student's Right of Expression under the First Amendment, Section 1983)**

43. The preceding allegations are incorporated as if set forth herein.

44. The First Amendment is applicable to Arizona State University through the Fourteenth Amendment.

45. A state, division of the state, or state official may not retaliate against a person by depriving him of a valuable government benefit that that person previously enjoyed, conditioning receipt of a government benefit on a promise to limit speech, or refusing to grant a benefit on the basis of speech. Those limitations apply even if the aggrieved party has no independent or affirmative right to that government benefit.

46. Pursuant to 42 U.S.C.A. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

47. By refusing to allow Ms. Klein to continue as station manager of The Blaze because of the content of her tweet, Defendants have illegally deprived Plaintiff of a valuable government benefit that she previously enjoyed on the basis of her speech.

48. Ms. Klein made the tweet in her personal capacity and not on behalf of the university.

8

49. Her speech was "pure speech" that did not intrude upon the work of the school or the rights of other students.

50. Defendants' conduct was in reckless disregard of the Plaintiff's rights.

51. Plaintiff is entitled to seek injunctive relief under 42 U.S.C.A. § 1983, as well as any and all damages caused by the Defendants' conduct, and punitive damages as allowed at law.

52. Plaintiff is also entitled to seek her attorneys' fees and costs under 42 U.S.C.A. § 1988.

## COUNT TWO
### (Violations of student's right to speak in a public forum, A.R.S. §§ 15-1864 *et seq.*)

53. The preceding allegations are incorporated as if set forth herein.

54. Pursuant to A.R.S. § 15-1864(A), "[a] university or community college shall not restrict a student's right to speak, including verbal speech, holding a sign or distributing fliers or other materials, in a public forum…"

55. Pursuant to A.R.S. § 15-1864(C), "Individual conduct that materially and substantially infringes on the rights of other persons to engage in or listen to expressive activity is not allowed and is subject to sanction."

56. Pursuant to A.R.S. § 15-1864(G), "[a]n individual student or a faculty or staff member of a university or community college may take a position on the public policy controversies of the day, but the institution is encouraged to attempt to remain neutral, as an institution, on the public policy controversies of the day unless the administrative decisions on such issues are essential to the day-to-day functioning of the university or community college."

57. Pursuant to A.R.S. § 15-1864(H), "[t]he university or community college may not take action, as an institution, on the public policy controversies of the day in a way that requires

students or faculty members to publicly express or endorse a particular view of a public policy controversy."

58. Pursuant to A.R.S. § 15-1864(I), "[a] person whose expressive rights were violated by a violation of this article" "may bring an action in a court of competent jurisdiction to enjoin any violation of this article by any university, community college, faculty member or administrator or to recover reasonable court costs and reasonable attorney fees."

59. Pursuant to A.R.S. § 15-1864(J), "if the court finds that a violation of this article occurred, the court shall award the aggrieved person injunctive relief for the violation and shall award reasonable court costs and reasonable attorney fees. The court shall also award damages of one thousand dollars or actual damages, whichever is greater."

60. By refusing to allow Plaintiff to continue as station manager of The Blaze due to the content of her tweet, ASU is impermissibly restricting her right to speak in a public forum, and/or taking action on a public policy controversy of the day that requires her to endorse a particular view of the controversy—namely, the position that Jacob Blake's arrest warrant, and/or other facts/evidence which would tend to show that the police interaction with Blake was primarily for criminal justice reasons, should not be read, shared, or commented upon.

61. Plaintiff is entitled to injunctive relief, as well as an award of her actual damages or one thousand dollars, whichever is greater; to punitive damages, as warranted by law; and to her reasonable attorneys' fees and costs.

## **GENERAL PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks as relief against Defendants:

    A.    An order of the Court enjoining Defendants from removing Plaintiff as station manager;

B. For any and all damages incurred as the result of Defendants' conduct, or one thousand dollars pursuant to A.R.S. § 15-1864(J), whichever is greater; and for punitive damages as warranted at law;

C. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988, A.R.S. § 15-1864, 28 U.S.C. § 1920, and any other applicable authority;

D. Pre-judgment and post-judgment interest on the above sums pursuant to any applicable authority;

E. Any other relief that the Court deems proper.

**RESPECTFULLY SUBMITTED** this 13th day of October, 2020.

**WILENCHIK & BARTNESS, P.C.**

*/s/ John D. Wilenchik*
John "Jack" D. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2020, the foregoing document was electronically transmitted to the Clerk's Office using the CM/ECF System for filing, and a copy emailed to:

Jose Cardenas
General Counsel of Arizona State University
jcardenas@asu.edu

David Bodney
BodneyD@ballardspahr.com

*/s/ Christine M. Ferreira*

11

DocuSign Envelope ID: FFABB827-0474-4748-942A-40A4D9F4BD3F

# VERIFICATION

(28 U.S.C.A. § 1746)

I, Rae'Lee Klein, declare as follows:

I have read the foregoing Amended Verified Complaint. The statements made therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 10/13/2020 _____.

DocuSigned by:

*linda Rae'Lee Klein*
ED3EBD07FF304F0...
_____

By: Rae'Lee Klein

12