1   **WO**

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                           FOR THE DISTRICT OF ARIZONA

8   Linda Rae'Lee Klein,                    )    No.  CV-20-01982-PHX-SPL
                                            )
9                                           )
                            Plaintiff,      )
10                                          )    **ORDER**
    vs.                                     )
11                                          )
                                            )
12  Arizona State University, et al.,       )
                                            )
13                                          )
                            Defendants.     )
14  _____       )

15          Before the Court is Defendants Arizona Board of Regents ("ABOR"), Arizona State

16  University ("ASU"), Walter Cronkite School of Journalism and Mass Communication

17  ("Cronkite"), and Kristin Grady Gilger's Motion to Dismiss filed pursuant to Fed. R. Civ.

18  P. ("Rule") 12(b)(1) and 12(b)(6) and LRCiv. 12.1. (Doc. 11) The Motion has been fully

19  briefed and is ready for consideration. (Docs. 11, 15, 19) For the following reasons, the

20  Motion is granted in part and denied in part.[1]

21  I.      **BACKGROUND**

22          Plaintiff Linda Rae'Lee Klein is a student at ASU's Cronkite School. (Doc. 6 at 4)

23  Plaintiff is or was station manager of the school's only radio station, The Blaze. (Doc. 6 at

24  2) Plaintiff alleges some of her fellow students demanded she be removed from her position

25  as station manager after she posted from her personal Twitter account about the police-

26  _____

27  [1] Because it would not assist in resolution of the instant issues, the Court finds the pending
    motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P.
28  78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

involved shooting of a black man, Jacob Blake. (Doc. 6 at 4) Plaintiff tweeted a New York Post article about Blake's criminal history—specifically, that at the time of the shooting he had an outstanding arrest warrant for allegedly "commit[ing] sexual assault against a woman by digitally penetrating her in front of her child, before stealing her car." (Doc. 6 at 3) Plaintiff tweeted the article along with the caption: "Always more to the story, folks. Please read this article to get the background of Jacob Blake's warrant. You'll be quite disgusted." (Doc. 6 at 4)

Several students subsequently demanded Plaintiff's removal from her position as station manager. (Doc. 6 at 4) In an email sent on September 15, 2020, Cronkite's Interim Dean (Defendant Gilger) told Plaintiff that "staying on as station manager is not an option." (Doc. 6 at 5) At some point, Plaintiff's fellow students allegedly blocked her access to the radio stations online management system. (Doc. 6 at 5) On October 13, 2020, Plaintiff filed a Complaint in this Court alleging (1) a claim under 42 U.S.C. § 1983 for violation of her First Amendment rights, and (2) a claim under A.R.S. § 15-1864 for violations of her freedom of speech as a University student. (Doc. 6 at 8–9) That same day, Plaintiff filed an Application for Injunctive Relief, seeking to enjoin Defendants from removing Plaintiff as station manager of The Blaze. (Doc. 2) Plaintiff filed an Amended Complaint on October 13, 2020. (Doc. 6) Defendants filed a Motion to Dismiss on November 6, 2020 alleging that (1) the Court lacks subject matter jurisdiction over the claims and (2) Plaintiff failed to state a claim upon which relief can be granted. (Doc. 11) Plaintiff filed her Response on November 20, 2020 (Doc. 15) and Defendants filed their Reply November 27, 2020. (Doc. 19)

## II.    **LEGAL STANDARD**

Rule 12(b)(1) "allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction." *Kinlichee v. United States*, 929 F. Supp. 2d 951, 954 (D. Ariz. 2013) (quotation omitted). "Allegations raised under Rule 12(b)(1) should be addressed before other reasons for dismissal because if the complaint is dismissed for lack of subject matter jurisdiction, other defenses raised become moot." *Id.* at 954. "A

motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006); *see also Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). "When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Renteria*, 452 F. Supp. 2d at 919. "When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact." *Id.* "A plaintiff has the burden of proving that jurisdiction does in fact exist." *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant is given fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When deciding a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

### III.   ANALYSIS

Here, Defendants move to dismiss the Amended Complaint in its entirety. (Doc. 11 at 1) Defendants argue that (1) Eleventh Amendment sovereign immunity protects ABOR, ASU, and Cronkite from suit; (2) Eleventh Amendment sovereign immunity applies to Defendant Gilger in her official capacity, (3)(a) Plaintiff fails to state a claim against Gilger personally; (3)(b) Plaintiff has not complied with Arizona's notice of claim statute; and (4)

1    Plaintiff failed to state a claim under A.R.S. § 15-1864. (Doc. 11 at 1–2) Defendants
2    contend this is not a constitutional law case and that Plaintiff's First Amendment rights are
3    not in fact at issue. (Doc. 11 at 2)

4        Plaintiff responds that (1) the Eleventh Amendment does not apply to constitutional
5    law claims and that she has adequately pled a First Amendment claim against Defendants,
6    (2) ABOR has consented to suit under A.R.S. § 15-1864, (3) Gilger may be sued in her
7    official and personal capacity, (4) Plaintiff has properly stated a claim under A.R.S. § 15-
8    1864, and (5) Arizona's notice of claim statute does not bar any of the claims at issue.
9    (Doc. 15)

10        The Court will first address the Rule 12(b)(1) arguments. *See Kinlichee*, 929 F.
11   Supp. 2d at 954.

12   **A.  12(b)(1) Arguments: Eleventh Amendment sovereign immunity creates a**
13   **jurisdictional bar**

14        *i.  ABOR, ASU, and Cronkite*

15        "Sovereign immunity provides that an individual may not sue a state, a division of
16   a state, or an instrumentality/arm of a state without the state's consent." *Arizona Students'*
17   *Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016) (internal citations
18   omitted). There is an exception to this rule under the *Ex Parte Young* doctrine, which allows
19   suits for injunctive relief to be brought against state officials in violation of federal law.
20   *Hason v. Med. Bd. of California*, 279 F.3d 1167, 1171 (9th Cir. 2002) (citing *Ex Parte*
21   *Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). That exception applies to ongoing
22   violations of a plaintiff's First Amendment rights to the extent that the plaintiff seeks
23   prospective injunctive relief. *Arizona Students' Ass'n*, 824 F.3d at 865. Importantly, the
24   exception does not apply to divisions, instrumentalities, or arms of states. *See id.*; *see also*
25   *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 994 (9th Cir. 2020). Furthermore, "[t]o
26   bring such a claim, the plaintiff must identify a practice, policy, or procedure that animates
27   the constitutional violation at issue." *Arizona Students' Ass'n*, 824 F.3d at 865.

28        Here, Plaintiff sues three state entities and one state employee. (Doc. 6 at 1) As

4

Defendants point out, the case Plaintiff cites as a basis for the *Ex Parte Young* exception, *Arizona Students' Association*, specifically states that ABOR cannot be sued as an entity. 824 F.3d at 865. (Doc. 19 at 3) That rule also applies to ASU and Cronkite because they are state entities. *Jamul Action Comm. v. Simermeyer*, 974 F.3d at 994. This Court does not have jurisdiction over ABOR, ASU, or Cronkite because of Eleventh Amendment sovereign immunity. To the extent Plaintiff seeks relief under Rule 21 to add individual regents, amendment is futile based on other deficiencies, as discussed below. Furthermore, Rule 21 is used in situations where there has been a misjoinder, and not usually in situations where the person or entity being sued does not fall within the Court's jurisdiction. Although a court may allow addition of parties if justice so requires under Rule 21, it is not clear that is the case here.

Plaintiff argues A.R.S. § 15-1625 indicates that the state of Arizona has consented to suit in federal court. (Doc. 15 at 4) The statute states that ABOR can "sue and be sued." A.R.S. § 15-1625(B)(3). This Court has previously held that A.R.S. § 15-1625 does not provide consent to be sued in *federal* court. *Lazarescu v. Arizona State Univ*., 230 F.R.D. 596, 599 (D. Ariz. 2005) (citing *Harris v. Arizona Bd. of Regents*, 528 F.Supp. 987, 994–95 (D. Ariz. 1981)). Plaintiff argues that *Lazarescu* and *Harris* are improper to show A.R.S. § 15-1625 does not waive Eleventh Amendment immunity in federal court because the cases were outside of the First Amendment context. (Doc. 15 at 5) That is irrelevant. There is nothing in the cases that confines them to a particular context, and this Court will not depart from those holdings.

Next, Plaintiff argues that the Arizona Legislature passed A.R.S. § 15-1864 to create jurisdiction over ABOR, ASU, and Cronkite for violations of the right to freedom of expression. (Doc. 15 at 4–5) The plain language of A.R.S. § 15-1864 states that persons whose rights have been violated "may bring an action in a court of competent jurisdiction to enjoin any violation of this article by any university, community college, faculty member or administrator…." A.R.S. § 15-1864(I). "Court of competent jurisdiction" is not defined in the statute. The U.S. Supreme Court has long held that states must explicitly consent to

suit in federal court. The Court detailed the history of its rule in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*:

> Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction, *Gunter v. Atlantic Coast Line R. Co.*, 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477 (1906), or else if the State makes a "clear declaration" that it intends to submit itself to our jurisdiction, *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944). *See also Pennhurst State School and Hospital v. Halderman*, 465 U.S., [89, 99 (1984)] (State's consent to suit must be "unequivocally expressed"). Thus, a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation. *Smith v. Reeves*, 178 U.S. 436, 441–445, 20 S.Ct. 919, 44 L.Ed. 1140 (1900). Nor does it consent to suit in federal court merely by stating its intention to "*sue and be sued*," *Florida Dept. of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n.*, 450 U.S. 147, 149–150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (*per curiam*), or even by authorizing suits against it "'*in any court of competent jurisdiction*,'" *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 577–579, 66 S.Ct. 745, 90 L.Ed. 862 (1946). We have even held that a State may, absent any contractual commitment to the contrary, alter the conditions of its waiver and apply those changes to a pending suit.

527 U.S. 666, 675–76 (1999) (emphasis added). Thus, absent any explicit language or legislative history to the contrary, consent to suit in a "court of competent jurisdiction" does not equate to consent to suit in federal court. The Ninth Circuit echoed this rule in *Stanley v. Trustees of California State University*, stating "the Supreme Court has held that the 'any court of competent jurisdiction' language . . . is not sufficient to constitute consent to sue in federal court." 433 F.3d 1129, 1134 (9th Cir. 2006). The plain language of A.R.S. § 15-1864 does not show an intent to consent to suit in federal court. The legislative history is also devoid of such an intent; there is no evidence of any discussion by the legislature of consent to suit in federal court. Thus, this Court will not read the phrase "a court of competent jurisdiction," to include federal courts. *See Coll. Sav. Bank*, 527 U.S. at 676 (citing *Kennecott Copper Corp*, 327 U.S. at 577–579); *see also Stanley*, 433 F.3d at 1134.

*ii. Dean Kristin Grady Gilger*

Plaintiff did not specify in her Amended Complaint whether she was suing Gilger in her official or personal capacity. In her Response to the Motion to Dismiss, Plaintiff states she is suing Gilger in both capacities. (Doc. 15 at 5–6) Defendants argue suit against Gilger is barred in her official capacity by the Eleventh Amendment because (1) *Ex Parte Young* only applies to injunctive relief and not monetary relief and (2) Plaintiff's claims are based on state law, and *Ex Parte Young* does not apply to state law claims. (Doc. 11 at 7) Plaintiff claims there is an independent basis for relief under the First Amendment and 42 U.S.C. § 1983 and thus the *Young* doctrine applies. (Doc. 15 at 7–8) Plaintiff also reasserts that A.R.S. § 15-1864 gives rise to jurisdiction over Gilger in her official capacity. (Doc. 15 at 7)

The Ninth Circuit has held that the *Young* doctrine does not apply "when a suit seeks relief under state law, even if the plaintiff names an individual state official rather than a state instrumentality." *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018) (citing *Pennhurst*, 465 U.S. at 100). The *Young* doctrine applies when a plaintiff seeks relief under federal law. *Pennhurst*, 465 U.S. at 105 ("[T]he *Young* doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States.") (internal quotations omitted). It is not up to the federal courts to tell state officials how to comply with *state* laws. *Id.* at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

Therefore, this Court does not have jurisdiction over state law claims against Gilger, even in her official capacity. As stated above, A.R.S. § 15-1864 does not provide state consent to suit in federal court, which also applies to Gilger in her official capacity. *See supra* III.A.i. Furthermore, Plaintiff cannot assert claims against Gilger under A.R.S. § 15-1864 in her personal capacity because the statute only provides a cause of action in the official capacity. Therefore, the only claims over which this Court has jurisdiction are the 42 U.S.C. § 1983 First Amendment claims against Gilger in her official capacity as a state

1    officer and in her personal capacity.

2    **B. 12(b)(6) Arguments: Insufficient pleadings and failure to comply with state**
3    **notice of claim statute**

4            *i. Defendant Gilger's status*

5    Plaintiff clarified in her Response that she is suing Gilger in both her official and
6    personal capacities. (Doc. 15 at 6–7) Plaintiff seeks injunctive relief in the official capacity
7    and damages in the personal capacity. (Doc. 15 at 6–7)

8                    a. <u>Official capacity</u>

9    Although the Court has jurisdiction over the First Amendment claim against Gilger,
10   it still must analyze whether Plaintiff sufficiently stated a claim. To state a valid First
11   Amendment claim for retaliation against a government official, a plaintiff must show three
12   things: "that (1) [s]he was engaged in a constitutionally protected activity, (2) the
13   defendant's actions would chill a person of ordinary firmness from continuing to engage
14   in the protected activity and (3) the protected activity was a substantial or motivating factor
15   in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citing
16   *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755 (9th Cir. 2006)). "Once a plaintiff has
17   made such a showing, the burden shifts to the [defendant] to show that it would have taken
18   the same action even in the absence of the protected conduct." *Id.* However, at this stage,
19   under Rule 12(b)(6) the Court must take the statements made in the Complaint on their
20   face as true to determine whether Plaintiff stated a plausible claim for relief. *O'Brien*, 818
21   F.3d at 933. If the complaint passes Rule 12(b)(6) muster, Defendants can avoid liability
22   by showing they would have taken the same actions even in the absence of the protected
23   conduct. *Id.*

24   Applying the *Pinard-O'Brien* standard, Plaintiff has shown that she was (1)
25   engaging in a constitutionally protected activity, that is, making a statement on the Internet.
26   (Doc. 6 at 4–5) Plaintiff has not made any allegations as to whether the actions taken by
27   Gilger would have "chill[ed] a person of ordinary firmness;" indeed, she has not alleged
28   that Gilger took any action other than sending the email that told her "staying on as station

8

manager is not an option." (Doc. 6 at 5) However, drawing a reasonable inference, the Court finds it likely that receiving such a message from the dean of one's school would chill a person of ordinary firmness. Plaintiff did allege that she was locked out of her account as a station manager but stated that it was other students that did so, not the school or Gilger. (Doc. 6 at 5) Plaintiff alleges that Gilger's statement was made as a direct result of Plaintiff's tweet, and that ASU "constructively or actually terminated her" based on the content of her speech, fulfilling the third element of the claim. (Doc. 6 at 5) Therefore, the 42 U.S.C. § 1983 First Amendment claim against Gilger in her official capacity has been adequately pled.

<u>b. Personal capacity</u>

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 966 (9th Cir. 2010) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). In a personal-capacity suit under 42 U.S.C. § 1983 a plaintiff must plead a deprivation of a federal right by an official acting under color of state law. *Soffer v. City of Costa Mesa*, 798 F.2d 361, 363 (9th Cir. 1986). Under qualified immunity, damages may not be awarded against the official in their personal capacity unless the official violated a "statutory or constitutional right," and "the right was clearly established at the time of the challenged conduct." *Lane v. Franks*, 573 U.S. 228, 243 (2014) (internal quotations omitted). "While the plaintiff in a personal-capacity suit need not establish a connection to governmental policy or custom, officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal citations omitted). *See also Martinez v. Town of Prescott Valley*, 467 F. Supp. 3d 786, 792 (D. Ariz. 2020).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the

right was clearly established in light of the specific context of the case." *Martinez*, 467 F. Supp. 3d at 792. District courts have discretion to decide which prong to address first. *Id.* The existence of qualified immunity is best determined as early as possible in litigation, preferably before discovery. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2 (1987) (qualified immunity was designed to ensure "insubstantial claims against  government officials will be resolved prior to discovery") and *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) ("we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.")). At its core, qualified immunity is designed to protect government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231 (internal quotations omitted). All that to say, if discovery brings about more evidence, government officials may bring qualified immunity up again at the summary judgment stage. *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1059 (9th Cir. 2019) (citing *O'Brien*, 818 F.3d at 936).

When determining qualified immunity, the court need not determine at the early stage whether the right was actually violated, only that the right was established at the time of the alleged violation. *See Pearson*, 555 U.S. at 223. As determined above, Plaintiff sufficiently pled a First Amendment claim. To determine whether the right was well-established, the Court looks to see whether a reasonable official in Gilger's situation would have known that her actions infringed on Plaintiff's First Amendment rights. *See Capp*, 940 F.3d at 1059 (analyzing whether "a reasonable official would have known that taking the serious step of threatening to terminate a parent's custody of his children, when the official would not have taken this step absent her retaliatory intent, violates the First Amendment"). Here, Defendants do not make any arguments as to whether the right was well-established, and thus, the Court will not consider the second factor.[2] Therefore, at this

_____

[2] The Court does not find the D.C. Circuit case cited by Defendants persuasive. (Doc. 11 at 7–8) Suits are brought against government officials in their personal capacity with great

stage, Gilger is not entitled to qualified immunity, though she may raise it again at summary judgment if the evidentiary record becomes more developed or if she cites appropriate case law providing grounds for qualified immunity. The personal claim against Gilger may proceed because Plaintiff sufficiently pled a First Amendment claim.

                *ii.*    *Arizona law requirements*

Because the Court already found that it has no jurisdiction over the state law claims, it will not address Defendants' arguments as to Plaintiff's compliance with A.R.S. § 15-1864 or A.R.S. § 12-821.01(A).

**IV.**   **CONCLUSION**

The Court does not have jurisdiction over ASU, ABOR, or Cronkite, nor does it have jurisdiction over the state law claim against Defendant Gilger in her official capacity. Plaintiff has no cause of action under state law against Gilger in her personal capacity. The First Amendment Claims against Gilger in her personal and official capacity are the only claims to survive this Motion to Dismiss.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 11) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants Arizona State University, Arizona Board of Regents, and Walter Cronkite School of Journalism and Mass Communications are **dismissed with prejudice** and the Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's claims brought against Defendant Kristin Grady Gilger under A.R.S. § 15-1864 are **dismissed with prejudice.**

Dated this 17th day of December, 2020.

                          Honorable Steven P. Logan
                          United States District Judge

frequency.